IN THE INTEREST OF A.S. and K.S., Minors.
No. 28341
Intermediate Court of Appeals of Hawaii.
February 26, 2008.
On the briefs:
June C. Ikemoto, for Mother-Appellant.
Francis T. O'Brien, for Father-Appellant.
Russell K. Goo, Jay K. Goss, Mary Anne Magnier, for Appellee-Department of Human Services, State of Hawai'i.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
In this termination of parental rights case, Mother-Appellant (Mother) and Father-Appellant (Father) appeal from: 1) findings of fact and conclusion of law filed by the Family Court of the Fifth Circuit (family court)[1] on December 1, 2006; 2) the family court's January 17, 2007, amended decision and order terminating the parental rights of Mother and Father and awarding permanent custody to the Department of Human Services (DHS); and 3) the family court's February 22, 2007, order denying the motions of Mother and Father for reconsideration of its findings of fact and conclusions of law. We affirm.

I.

A.
A.S. and K.S. are biological brothers. A.S. was born in 1992, and K.S. was born in 1996. They were both adopted by Mother and Father in 1998.
In February 2002, DHS took temporary foster custody of A.S. following allegations that Mother repeatedly hit A.S. on the head with an eight-inch metal tablespoon and made A.S. kneel on the floor, made him say three prayers, and demanded that he hit his head to the floor with each prayer. After completing parenting classes, Mother and Father regained custody of A.S. on March 12, 2002.
On April 18, 2004, Mother allegedly used a wooden baseball bat and a stick to strike A.S. on his face, arms, chest, and legs. The following day, Mother allegedly tied a rope around A.S.'s neck, choked him, swung him around the room with the rope tied to his neck, tied his hands behind his back, and then left him at home alone. A.S. dialed 911 from behind his back and reported that he had been beaten and tied up by Mother. A police officer responded to the home and found A.S. with his hands bound behind his back. The officer called for emergency medical assistance, and A.S. was taken to Kauai Veterans Memorial Hospital.
Mother was arrested and on may 2004, she was indicted for assaulting A.S. On January 18, 2005, Mother pleaded guilty to two counts of second degree assault. She was sentenced to one year of imprisonment and was incarcerated from April 2005 until April 2006.

B.
DHS took A.S. into foster custody on April 19, 2004, and K.S. into foster custody on April 20, 2004. DHS social worker Gloria Acain (Acain) was initially assigned to the case as an investigator but later became the case manager. On April 22, 2004, DHS filed a Petition for Temporary Foster Custody that was signed by Acain. It also submitted a Safe Family Home Report prepared by Acain. The report recommended that the family court make a finding of aggravated circumstances and expedite the termination of parental rights. On May 4, 2004, the family court awarded DHS foster custody of A.S. and K.S.
Mother and Father were not permitted to have visitation with A.S., and A.S. stated that he did not want to see his parents. Mother and Father were initially allowed to have supervised visits with K.S. However, the visits were terminated on July 29, 2004, when Acain determined that Mother and Father were bribing and coaching K.S. to say that he wanted to return home. In November 2005, Father was allowed to resume his visits with K.S. under the supervision of K.S.'s therapist, Diane Gerard, Ph.D. The length of the supervised visits were gradually increased, but the visits were suspended on April 26, 2006, after K.S. was upset by Father's behavior during a visit and indicted that he did not want further contact with his parents. K.S.'s visits with Father were later resumed on a less regular and sometimes abbreviated basis.
Mother and Father entered into six different Family Service Plans with DHS to help them learn the necessary skills to provide a safe family home for A.S. and K.S. Services listed in the various service plans included "Comprehensive Services (Individual and Family Counseling, Parenting Education)," to be provided by Personal Parenting and Assessment Services, Inc. (Personal Parenting), as well as comprehensive psychological evaluations and a substance abuse evaluation for Father. Mother and Father successfully completed all the services that were required in the service plans, thereby demonstrating their willingness to provide a safe family home for A.S. and K.S.
Jody Aronica (Aronica) of Personal Parenting was responsible for evaluating and reporting on Mother's and Father's performance with respect to the services provided by Personal Parenting. Aronica issued seven different reports over the two-year time period she provided Mother and Father with the comprehensive services required by the six service plans. Aronica had more than one hundred visits with Mother and Father. Aronica reported that over the course of these visits, Mother and Father took responsibility for their actions, understood the impact that the abuse had on A.S. and K.S., and developed realistic expectations for the children. Aronica eventually opined that with continued education and support, Mother and Father should be able to provide the children with a safe family home.
Acain submitted seven Safe Family Home Reports to the family court over the course of the case which indicated, in opposition to Aronica's reports, that Mother and Father were not making any progress in developing appropriate parenting skills. Acain recommended that permanent custody of A.S. and K.S. be awarded to DHS because Mother and Father were unable to provide a safe home for A.S. and K.S. even in light of the services DHS provided. Acain had concluded by February 24, 2005, (the date of Aronica's third report), that Aronica has lost her professional focus and had become an advocate for Mother and Father. Thus, Acain did not believe the information provided by Aronica regarding the progress being made by Mother and Father.
Acain did not forward Aronica's fourth, fifth, and sixth reports, which were favorable to Mother and Father, to the family court when Acain received them. Acain testified that she withheld Aronica's reports because they were inconsistent with Acain's observations. In addition, Acain's Safe Family Home Reports to the family court did not disclose that Aronica held an opinion about Mother and Father that differed from Acain's opinion. In July 2006, prior to the permanent plan hearing, Mother and Father raised the issue of the "missing" Aronica reports with the family court. The reports were then submitted to the court before the hearing.
Sarah Silverman, the Guardian Ad Litem (GAL) appointed to represent A.S. and K.S., made oral reports at the court's jurisdiction hearing and all review hearings. Mother and Father did not raise any contemporaneous objection to the GAL's failure to submit written reports. The GAL issued one written report to the family court on July 12, 2006, stating that she agreed with DHS's recommendations that permanent custody be awarded to DHS.

C.
At the permanent plan hearing, Lynn Gorski, Ph.D., A.S.'s treating therapist, testified that in June 2005, A.S. had a diagnosis of post-traumatic stress disorder marked with depression, anxiety, and nightmares. As of July 2006, Dr. Gorski opined that A.S. was doing well with no current diagnosis, but she believed it would not be a good idea to return A.S. to Mother and Father. Dr. Gorski explained that A.S. was afraid of being returned to Mother and Father and that A.S. was always frightened when he lived with them to the point of thinking he would be killed.
Mary Ann Hill, Ph.D., testified that she was K.S.'s treating therapist from June 2004 to March 2005 and during that time, K.S. was suffering from post-traumatic stress disorder. Dr. Gerard, who started treating K.S. in May 2005, diagnosed K.S. as suffering from anxiety and depression, and K.S. was subsequently prescribed the anti-depressant medication Zoloft. Dr. Gerard further testified that K.S. felt guilty and confused over the abuse of A.S. and that K.S. feared he would also be abused if he were returned to Mother and Father. According to Dr. Gerard, Father contended that K.S. did not really witness the abuse of A.S. and thus was not affected by the abuse, but rather that K.S. has had "ideas" planted in his head by adults. Dr. Gerard did not believe that Father would permit K.S. to continue his strong bond with A.S. because Father felt A.S. was a very damaged person who should be kept away from K.S. Dr. Gerard opined that K.S. had more anger toward Mother than Father to the point of hating her.

II.
On appeal, Mother challenges the family court's findings of fact and conclusions of law that: 1) "DHS has made reasonable efforts to reunify [the] family;" 2) "DHS has shown by clear and convincing evidence that [A.S.] and [K.S.] suffered psychological harm and continue to suffer psychological harm as a result of the physical harm inflicted upon [A.S.] by Mother and witnessed by [K.S.] and the failure of Father to prevent such physical harm from occurring;" 3) "[a]s a result of the continued psychological harm suffered by [A.S.] and [K.S.], Mother and Father are not able to provide a safe family home for them now, nor is it foreseeable that they will be able to provide them with a safe family home, notwithstanding all of their participation in and compliance with service plans;" and 4) Aronica's fourth, fifth, and sixth reports were not timely submitted to the court for "unknown reasons." Mother further argues that she was denied her due process rights when Acain withheld submitting three of Aronica's reports to the family court and that the family court erred in considering the best interests of the children, rather than parental fitness, in terminating her parental rights.
Father argues on appeal that the family court erred by: 1) permitting Acain to remain on the case when she was biased, thereby denying Father of his procedural due process rights; 2) finding and concluding that DHS made reasonable efforts to unify Father with his children; 3) failing to require that the GAL submit written reports as required by Hawaii Revised Statutes (HRS) § 587-34(c) (2006 Repl.); and 4) basing its decision on the children's best interests.
After a careful review of the record and the briefs submitted by the parties, we resolve the issues on appeal as follows:
1. The family court did not clearly err in finding that DHS made reasonable efforts to reunify the family. DHS provided the entire family with services that were aimed at increasing the family's chances for reunification. These included individual therapy for A.S. and K.S. and parenting classes and counseling for Mother and Father. There was substantial evidence to support the family court's finding, and we are not left with a definite and firm conviction that a mistake was made. In re Doe, 95 Hawai`i 183, 190, 20 P.3d 616, 623 (2001).
2. The family court did not err in concluding that Mother and Father were not able, and would not become able in the foreseeable future, to provide a safe family home for A.S. and K.S. because of the psychological harm A.S. and K.S. suffered and continue to suffer as a result of the physical harm inflicted on A.S. The therapists for A.S. and K.S. provided testimony that the children had suffered from post-traumatic stress disorder as a result of the abuse inflicted on A.S. The therapists' testimony further established that based on the psychological needs of A.S. and K.S., their reunification with Mother and Father would be harmful, unhealthy, and unsound.
The family court is generally vested with wide discretion in making its decisions and those decisions will not be disturbed unless there is a manifest abuse of discretion. Id at 189; 20 P.3d at 622. The family court did not err in relying on the therapists' testimony to conclude that Mother and Father were not able and would not in the foreseeable future become able to provide the children with a safe family home. See HRS § 587-25(a) (2006 Repl.) (including the psychological needs of the child and the results of psychiatric/psychological/developmental evaluations of the child and parents as among the guidelines to consider in determining whether the child's family is willing and able to provide the child with a safe family home).
3. Acain's conduct did not deprive Mother and Father of their due process rights. We do not condone Acain's behavior. We find it disturbing that Acain withheld three of Aronica's reports from the family court and that Acain did not disclose Aronica's contrary views in the Safe Family Home Reports that Acain presented to the court.
However, Aronica's reports were disclosed to the family court before the permanent plan hearing. The family court recognized Acain's misconduct and ordered that Acain pay sanctions for failing to disclose Aronica's reports in a timely manner. The family court also reviewed all of Aronica's favorable reports and considered Aronica's testimony prior to making its decision to terminate Mother's and Father's parental rights.
In addition, Mother and Father had the opportunity to present evidence to the family court of Acain's alleged bias, including cross-examining her at the hearing. Thus, Mother and Father had the opportunity to fully apprise the family court of their concerns regarding Acain.
Finally, the family court's decision was based primarily on the testimony of the therapists for A.S. and K.S. regarding the psychological harm to the children, not on Acain's views about Mother and Father. Indeed, the family court specifically found that by participating in and successfully completing all the services that were required of them, Mother and Father had demonstrated that they were willing to provide a safe family home for the children. The court terminated Mother's and Father's parental rights because it concluded that Mother and Father were unable to provide a safe family home for the children and would not become able to provide a safe family home in the foreseeable future.
Under these circumstances, we conclude that Acain's actions did not result in substantial prejudice to Mother and Father and did not violate their right to due process. Prior to the termination of their parental rights, Mother and Father were given "an opportunity . . . to be heard at a meaningful time and in a meaningful manner" by the family court. In re Doe, 99 Hawai`i 522, 533, 57 P.3d 447, 458 (2002).
4. The family court did not err in finding that Acain failed to timely submit Aronica's fourth, fifth, and sixth reports for "unknown reasons." We construe the family court's use the term "unknown reasons" to mean without good or valid reasons. The family court's imposition of sanctions against Acain for failing to submit the reports in a timely manner validates our construction. As so construed, the family court's finding was correct and supported by substantial evidence.
5. We reject Father's claim that the family court erred in not removing Acain as case manager. Father did not include the transcript of the hearing on Father's motion to remove Acain, and he thus failed to meet his burden of demonstrating "error by reference to matters in the record." State v. Hoang, 93 Hawai`i 333, 334, 3 P.3d 499, 500 (2000). "[W]e will not presume error from a silent record." Id. at 336, 3 P.3d at 502.
6. We reject Father's claim that the family court violated his right to due process by failing to require Silverman, the GAL, to file written reports every six months as required by HRS 587-34(c). The GAL presented oral reports to the court at the jurisdictional hearing and all review hearings, and the GAL filed a written report on July 12, 2006. Father did not raise a contemporaneous objection to the GAL's failure to file written reports and thus waived his claim regarding such failure. In any event, Father has not demonstrated that he was prejudiced by the GAL's presentation of oral rather than written reports. See In re Doe, 91 Hawai`i 166, 174, 981 P.2d 723, 731 (App. 1999).
7. We reject Mother and Father's claim that the family court erred by considering the best interests of the children in terminating their parental rights. Mother and Father are correct that the best interests of the children alone cannot justify a termination of parental rights. The best interests of the children can only be considered if the family court first determines that the parents are not able to provide a safe family home within a reasonable period of time. See In re Doe, 95 Hawai`i at 194-95, 20 P.3d at 627-28 (2001). Here, the family court properly considered the best interests of the children after it determined that Mother and Father could not provide a safe family home within a reasonable period of time.

III.
We affirm the family court's: 1) December 1, 2006, findings of fact and conclusion of law; 2) January 17, 2007, amended decision and order terminating the parental rights of Mother and Father and awarding permanent custody to DHS; and 3) February 22, 2007, order denying the motions of Mother and Father for reconsideration of its findings of fact and conclusions of law.
NOTES
[1] The Honorable Calvin K. Murashige presided.